All right, good morning. The Court will now call Alvidrez Quezada v. Bondi, case number 24-1929. Each side will have 15 minutes. If appellants would like to reserve time for rebuttal, please be aware you are responsible for keeping track of your time, but I would like to know if you plan to reserve time. So whenever you're ready, Counsel. Good morning, Your Honors, and may it please the Court. David Graham Blitzer on behalf of Petitioner Yolanda Alvidrez Quezada. I'd like to reserve three minutes of my time for rebuttal. I'll make sure to watch my time. Your Honors, most of the statutory citations are going to be from Title VIII of the United States Code, Section 1101, so I'm just going to refer to the subsection numbers for short. In 1996, Your Honors, when Congress passed IRA-IRA, in 48B they gave us a definition to tell the operative sentence for grounds of removability that require a particular sentence length. And for almost 20 years after the passage of IRA-IRA, this Court and the Respondent Agency held that resentencing would count for immigration purposes. In this case, Respondent is trying to expand its power to deport beyond that which Congress gave to it. At heart, Your Honors, this is a resentencing reclassification case. Kennedy. Pardon me. Gave to her. She's Attorney General. Yes. Yes. At heart, this is a resentencing reclassification case. Petitioner's throughout the proceeding. And even the resentencing was connected to the original indictment and the original guilty plea. And so the starting point for our analysis, Your Honor, is Garcia-Lopez v. Ashcroft, where this Court said categorically, in light of our precedent, it is clear that a state court's designation of a criminal offense is binding on the BIA for purposes of determining whether there has been a conviction under the INA. Moreover, it said, more importantly, a state court expungement of a conviction is qualitatively different from a state court order to classify an offense or modify a sentence. In the latter situation, the state court is clearly constrained in the nature of the conviction pursuant to state law. Now, Respondent cites a line of cases of this Court under the Pickering rule where Petitioners had their substantive criminal offense vacated and then either changed or dismissed. Those cases don't apply to Petitioner's facts where the substantive offense stayed the same throughout the proceeding. The Respondent cites Prado, but Prado is far afield from the facts of Petitioner's case. Kennedy. Pardon me. Let's get some procedural facts straight. Zinke. Yeah. Kennedy. If we agree on this. The Petitioner was first convicted of a felony and was sentenced to 12 to 48 months, which is a felony, which sentence was suspended but it was imposed. Zinke. That's correct, Your Honor. Kennedy. Correct. So then on the resentencing, the sentencing became a misdemeanor, but it was not because of any procedural error or factual error in the original sentencing or trial, but because of her successful completion of the probation terms. Correct? Your Honor, we'd say that the burden is on the government by clear, convincing, and unequivocal evidence that any change in sentence under the Pickering standard is solely for rehabilitative purposes, and we don't believe that the government has met their burden in this case. Kennedy. Oh, okay. Then why haven't they met the burden? Zinke. Your Honor, because again, it has to be solely for rehabilitative reasons, right? The fact that Petitioner went to mental health court is just, that alone is not sufficient to say that that was the basis, especially since the order didn't cite, right, rehabilitative or immigration reasons for why the sentence was changed. What's your authority for the solely part? That's in this Ninth Circuit case, I believe it's Cardoso, I'm not remembering the exact name, but that has been the standard in the Ninth Circuit, that it's solely for rehabilitative reasons. But, Your Honors, I'd like to go back to the fact that both this Court's precedence and 48B itself don't actually say the exact manner in which the sentence changed is important. So let's start with, again, Garcia-Lopez. Garcia-Lopez cited to a variety of ways in which the sentence could be changed. It cited to the agency's then case on point, Matter of Song. It also cited to, which is a sentence alteration case, it also cited to all the INS. And even the Garcia-Lopez Court characterized it as a modified conviction. And so the Garcia-Lopez Court saw resentencing expansively. But more importantly, in 48B, Congress has told us that the operative sentence for movability grounds is not tied to a conviction, but to an offense. So if we look at 48B, it says any reference to a term of imprisonment or sentence with respect to an offense. And so if Congress wanted to tie the operative sentence to the conviction, given that the word conviction is right above it, it seems strange that they said offense. And so that means that under 48, the operative sentence is that tied to the substantive criminal offense triggering removability. Kennedy. That's not what Pickering says. Pickering says conviction vacated for a reason used as a conviction in removal proceedings, whereas a conviction vacated because of a procedural or substantive defect in the criminal proceedings may not. They don't talk about the crime. They don't talk about the sentence. They talk about the conviction. I'm talking about 48B, Your Honor, though. In 48B, Congress gave us that definition. The Pickering line of cases are about vacated convictions that change the substantive criminal offense. And so, again, if you look at actually 48, what Congress enacted, it doesn't focus on the substantive criminal offense. Has the substantive criminal offense here changed from a felony to a misdemeanor? No. The sentence changed. But from beginning to end, from the indictment, the substantive criminal offense was attempted battery with substantial bodily harm. And so that word offense in 48B, right, we have to give effect to the word that Congress used. And that ties back to the criminal offense, not the sentence. The sentence is distinct. And I'd like to just talk with the Court for a second about how 48A and 48B work differently. Right? If we look at the language that Congress used — Are you saying that Pickering conflicts with 48B? No. Pickering applied, again, to a vacated conviction where the substantive criminal offense changed. So Pickering never interpreted 48B. Right? It's only when the Respondent Agency — sorry, when then-Attorney General Barr passed Thomas and Thompson that the Pickering rule was applied to 48B. Prior to that, the agency saw 48B and resentencing as distinct from cases where the substantive conviction was changed. And so I'd like to just walk the Court through 48A versus 48B for a second. So if we look at 48A, it says, a formal judgment of guilt entered. So first we see the indefinite Article A, and we see the word entered. When something's entered into the record, right, the only way it can be gotten rid of is if it's struck. Right? If it was void to enter in the first place. And that suggests that for the conviction of the offense, Congress was pegging it to the entry of the conviction. Now, let's look at 48B. It says, with respect to an offense — an offense, it's the period of incarceration or confinement ordered by a court of law. So first we have the definite Article B, and that matches Petitioner's round of removability, 43F, which is the term of imprisonment. And then we see the word ordered. Right? Orders can be changed, vacated, modified. They are tied to the power of the court. And so our position, Your Honor, is that under 48, Congress has, as a definitional matter, set the operative sentence for removability to what is the sentence in force at the sentencing court. And that matches this Court's precedents in Alberto Gonzalez and Bayoudan. This Court said in Alberto Gonzalez that the sentence for removability purposes is the sentence actually imposed. And in Bayoudan, which applied Alberto Gonzalez, a Petitioner had a 365-day sentence, and then it was reduced to 364. And in a precedential order, this Court said that Bayoudan was no longer removable. It didn't qualify the reason it was changed, and it didn't focus on — sorry — the manner or the nature of the sentence. It was also Espinoza, when this Court gave Chevron deference to Matter of Roldan, which is kind of a precursor case to the Pickering test. And then I'd also like the Court to think about the reenactment canon. So this is best exemplified, right, by Matter of Martin. Prior to Ira-Ira, in the agency case law, resentencing was respected for immigration purposes. In Matter of Martin, the noncitizen had their sentence changed, and the Court respected it. And then in Ira-Ira, the Court changed — sorry, the Congress changed the definition of sentencing, and they focused on the particular BIK cases they didn't like, particularly around suspended sentences, and changed it. And yet they didn't say anything about resentencing, even though for many years prior to that, resentencing had been respected for immigration purposes. And so Congress reenacted that longstanding administrative rule. The resentencing counts for immigration purposes, regardless of the reason, regardless of the manner. Last, I'd like to address Respondent's argument that Petitioner's proposed interpretation creates disharmony between 48A and 48B, and it cites Virtuta for that. And I don't actually think our interpretation does create disharmony. It reflects the difference between a conviction and a sentence. Right? When a conviction happens and there's a finding of guilt, it's like a bell that can't be unrung. Unless it's changed for a procedural or substantive defect, that finding of guilt exists. Sentences aren't a binary. Sentences aren't a yes or no. They're a decision by the sentencing judge along a spectrum of options to figure out what is the gravity of the offense. And Congress chose, and it could have chosen otherwise, Congress chose to peg the sentencing definition to the sentencing judge's determination. But here the — didn't the immigrant withdraw her felony guilty plea? That's correct, Your Honor. Then she couldn't have been convicted under the prior felony plea. So, I mean — Until she pleaded guilty again to the misdemeanor. Right. And, Your Honor, I guess what I'm saying is that 48B, the sentencing definition, isn't tied to a particular conviction. It's tied to a particular offense. And since there was the same indictment from the beginning, the same guilty plea, and that guilty plea contemplated — Telling us that the Pickering language is no longer applicable. Nope. Nope. I'm saying that the Pickering line applies to cases where the substantive criminal offense has changed. Right? The actual crime, right, the offense, as it says in 48B, has changed, been vacated, dismissed. I'm saying in Petitioner's case where you have the same criminal offense throughout the proceeding, the same indictment, the same guilty plea, that under 48B, resentencing counts. Now, I am saying that Thomas and Thompson was wrongly decided. Right? Thomas and Thompson applies the Pickering rule onto 48B. It graphs the Pickering rule, which really was a species of the language of 48A, onto 48B. And again, I'd emphasize that this Court in 48 does not pay attention to the particular manner under State law in which the sentence was changed, whether it's an amended judgment of conviction, sentence alteration. There's no language in 48 or this Court's opinion in Garcia-Lopez, which, again, saw this expansively, that says that it has to be just a sentence alteration for that to apply. I'd like Virginia Gordon. Virginia Gordon. Good morning, and may it please the Court, I'm Virginia Gordon for the Respondent. Your Honors, this case has a straightforward resolution. It involves the vacater of a conviction for a categorical, aggravated felony crime of violence. After a withdrawal of a guilty plea, and then a new guilty plea to the same, the same offense, but categorized as a misdemeanor. Correct. So will you address the point that was made by opposing counsel? Does that make a difference? Yes, Your Honor. I don't believe it makes a difference for the resolution of this case because there was a conviction under the definition at 1101A.48a, and I will also use the 48a, 48b subcategories. So we had a conviction under 48a, as the INA defines conviction. The judgment of conviction shows there was a finding of guilt based on a guilty plea to the felony level offense. There was a sentence imposed, a prohibition on her liberty, Ms. Alvira Esquivada's liberty, and that was a conviction. She then participated in Nevada's Rehabilitative Mental Health Court Program, and when she successfully completed that, she requested to withdraw to have an early release from probation, which was granted. She withdrew her felony plea of guilt, and then she entered a new plea to a gross misdemeanor of attempted battery with substantial bodily harm and was sentenced to credit for time served and had an amended judgment of conviction entered. So we had a conviction, we had a rehabilitative process, we had a vacator, and we had a new conviction. And because of that, it's squarely under Pickering, which says that if a conviction is vacated for purposes of rehabilitation or to alleviate immigration hardships, it remains effective for immigration purposes. And thus the board properly found that she was removable on that basis. But when you address the argument that counsel made that Pickering is not applicable to this case. I do hear my colleague's argument there, but we disagree fundamentally on that because Pickering is very clear that if there's a conviction that is vacated for rehabilitative purposes, it remains effective for immigration consequences. And we don't see that the word offense in 48B makes a difference here because that's, as this Court has said in Ratuta v. Holder, the A and B must be read together to make sense of them. And B modifies A, as Ratuta said, and it's clear from the way the statute is written where 1101A provides us with definitions. All of the definitions, when you look at 1148A, the term is in quotation marks. The only term in quotation marks here is conviction. So we're defining a conviction and B is modifying that definition of a conviction. So that Congress used the word offense, we don't see it making as much of an impact as you can't be sentenced for an offense. You can only be sentenced for a conviction. Correct. And Ms. Alvidrez-Quesada was sentenced for her conviction of felony attempted battery of substantial bodily harm when she was first convicted. She engaged in a rehabilitative process under Nevada law, and then she withdrew that plea. And under Nevada law, they consider that a vacator. Her conviction was vacated. She replied to the gross misdemeanor level, was convicted, and had a new sentence. And that's the only change. We didn't have a sentence modification here. We had a conviction vacated. How do you respond to the petitioner's argument that only convictions that are altered solely for rehabilitative purposes qualify? To the argument that, I'm sorry, Your Honor, can I seek clarification on that? Yeah, that it's only convictions that are altered solely for rehabilitative purposes. But the Ninth Circuit hasn't said what the government has to show to make it solely rehabilitative. And what the government showed here is sufficient to meet what the Court has said is when you're looking at this, we looked under Bolinas-Lucero, we look at the State law, the reasons the petitioner or the individual provided for seeking the vacator, as well as the Court's order. And we look for what the record compels. And here the record compels that this was rehabilitative. We have a Nevada process that allows certain defendants who meet mental health criteria and have not been convicted of certain offenses to participate in mental health court if the criminal court judge agrees. Was there any evidence presented by the immigrant that there were other reasons besides rehabilitation for her motion? What I hear from there is suggesting that DHS had to prove a negative. What DHS provided was enough evidence to compel a conclusion that this was solely rehabilitative. My question, let me rephrase it. When she went to the Nevada court to withdraw, to have her sentence changed, did she provide any evidence other than the fact that she had completed rehabilitation in the mental facility as a reason for the vacator to be granted? No, Your Honor. The evidence that she presented, and DHS provided this to the Court, but the evidence that was provided to the criminal court was that she successfully completed mental health court, complied with all medication and meeting requirements, that she did all of the counseling and therapy that was required of the program, and that she met those requirements. And that was it. Did the Court make any findings on any other basis for vacating the earlier conviction? No, Your Honor. The Court just said that it was pursuant to the negotiations that were done during the plea proceedings that it would vacate the order. And Nevada law further shows that mental health, when we look at Nevada law under Bolinas that allows for this, Nevada law shows that this is rehabilitative because it allows under state law to lessen the effects of the sentence that was originally entered. And this Court, in an unpublished decision, Delatorre Solis, upheld this, a similar situation where a person was convicted of felony mayhem, participated in probation and successfully completed it, and then was able to withdraw that felony mayhem plea, plead to gross misdemeanor mayhem, and have, for Nevada purposes, that case vacated. But it was still a conviction for felony mayhem for immigration purposes, and the individual was removable because it was a vacator, it was rehabilitative, and Pickering says a conviction vacated for rehabilitative purposes remains valid for immigration effects. Are there any further questions? All right. Well, if there are no further questions, we just ask that the Court deny the petition for review. And thank you for your time. Thank you. I'm going to ask you to please walk me through your argument that Pickering doesn't apply to this case once more. Okay. So, Your Honor, first of all, I'd like to say that the Respondent hasn't cited a single case under the Pickering standard where the Pickering rule applied to a removal to the ground where the sentence changed, right? There's no precedential opinion. They cite just one case. There's no precedential opinion where, when a sentence changed, that the Pickering rule was applied to that. And so my argument, Your Honor, is that Pickering is about whether there's a conviction for an offense. Okay? The Pickering rule is a product of the particular language of 48A, whether you have been convicted of an offense. That is different than what is the sentence for that offense. And again, Your Honor, we have to give meaning to the words that Congress used. It used the word offense, not conviction. Now, again, Respondent cites Ratuda for the harmonious reading canon. First of all, that's only a presumption. If the text can't bear that presumption, right, Scalia and Garner say this, then it doesn't work. But at the same time, I'd also like to point out again that in this Court's jurisprudence under Garcia-Lopez, it said that a State court's designation of a criminal offense is binding for whether there has been a conviction. So even under this Court's precedence, if the Court is inclined to say, well, if there's a conviction, then that's the operative sentence, whatever's with the conviction. Garcia-Lopez said it's binding on that conviction. Okay? Now, Judge, I just want to the case for the solely real ability that we talked about earlier. That's Cardoza v. Seca. And as the Respondent pointed out, the guilty plea agreement, right, contemplated this change. And so the order doesn't say there were no findings in the order that said that this was changed for because of the mental health court. And so we, again, it's clear, unequivocal evidence. And it's our position that the government didn't meet this burden. But the only evidence that she presented for changing the sentence was her rehabilitation, right? Yes, Your Honor. And in our ---- Did she present any other evidence, like that she had kids that she had to take care of or that she had been working in NGOs or doing anything like that? It's our position, Your Honor, that that's not enough, that it may be a factor. We acknowledge that the mental health court is a factor. But what other factor could there be? Again, the sentencing order is silent on why the judge decided to change the sentence. Because all he had before him was the rehabilitation evidence that you didn't present, or not you, but whoever was representing her, didn't present any evidence other than that for the change of plea. Yes. And it's our position, Your Honor, that that's not clear, unequivocal and convincing, because the sentencing order doesn't particularly tie it to that mental health court treatment. Counsel, I wanted to ask you on Garcia-Lopez. What did the court actually sentence Garcia-Lopez to? So, Your Honor, the particular facts of Garcia-Lopez are, I believe, that there was a ---- he was originally sentenced to ---- they withheld sentence, and then eventually he was sentenced to a misdemeanor. And so the question ---- the particular factual question of Garcia-Lopez was whether it was ---- had been designated as a felony or a misdemeanor earlier in the case. So the fact that he ---- that Garcia-Lopez was not sentenced to a felony, does that make a difference? Because he or she was sentenced, correct? Your Honor, it's our position that the Garcia-Lopez court didn't limit it to this particular factual circumstance. Again, it cited matter of song, which is a sentence alteration case. It cited Sandoval v. Inez, which was a modified conviction case. They called it that. And in Sandoval, it has a similar fact pattern for Petitioners. Now, again, they said it was because of a procedural substantive defect. But the point is that the Garcia-Lopez court didn't care about the exact manner in which the sentence was changed. And I don't ---- honestly, Your Honor, I don't think 48B does either. I think Congress wrote it to give effect to the sentencing of the operative court for the offense. I know I've run over my time. Okay. Thank you, counsel. All right. Thank you, Your Honors. All right. This concludes our arguments for this morning. This matter is now submitted. I'd like to thank the court for its assistance and also ---- You didn't mention the CICI. Oh, I mentioned it earlier. Thank you. And I'd also like to thank Judge Brown for assisting us this week. Thank you, everyone. We now stand in recess. All rise.
judges: BEA, ALBA, Brown